# 22-764

## United States Court of Appeals for the Second Circuit

JAY S. KRAVITZ,

*Plaintiff-Appellant,*

v.

S. PURCELL, A. BAKER, L. ANDREU, D. MCCRAY, G. ST. VICTOR, D. MCMAHON, OFFICER WASEILER, SGT. ZUPAN,

*Defendants-Appellees,*

STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF CORRECTIONS, ANTHONY ANNUCCI, NYS Department of Corrections Commissioner, Ex Officio,

*Defendants.*

On Appeal from the United States District Court for the Southern District of New York

**BRIEF AND SUPPLEMENTAL APPENDIX FOR APPELLEES**

BARBARA D. UNDERWOOD
 *Solicitor General*
JUDITH N. VALE
 *Deputy Solicitor General*
MARK S. GRUBE
 *Assistant Solicitor General*
  *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
28 Liberty Street
New York, New York 10005
(212) 416-8020

Dated: December 7, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................ii

PRELIMINARY STATEMENT ................................................................ 1

ISSUE PRESENTED ................................................................................ 3

STATEMENT OF THE CASE ................................................................. 3

    A.   Factual Background ................................................................. 3

    B.   This Proceeding ....................................................................... 6

STANDARD OF REVIEW ....................................................................... 9

SUMMARY OF ARGUMENT ............................................................... 10

ARGUMENT

    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT
    TO MCMAHON AND WASSWEILER ON KRAVITZ'S FIRST AMENDMENT
    CLAIM ..................................................................................................... 11

CONCLUSION ....................................................................................... 19

i

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Benjamin v. Coughlin*,
905 F.2d 571 (2d Cir. 1990) ............................................................... 11

*Brandon v. Kinter*,
938 F.3d 21 (2d Cir. 2019) ...................................................... 12, 15-16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................ 9

*City of Escondido v. Emmons*,
139 S. Ct. 500 (2019) ........................................................................ 17

*Davidson v. Scully*,
114 F.3d 12 (2d Cir. 1997) ................................................................. 9

*Employment Division, Department of Human Resources of Oregon
v. Smith*,
494 U.S. 872 (1990) .......................................................................... 12

*Ford v. McGinnis*,
352 F.3d 582 (2d Cir. 2003) ........................................................ 11, 14

*Francis v. Coughlin*,
891 F.2d 43 (2d Cir. 1989) ................................................................ 18

*Graham v. Lewinski*,
848 F.2d 342 (2d Cir. 1988) ............................................................... 9

*Green Haven Prison Preparative Meeting of Religious Soc'y of
Friends v. New York State Dep't of Corr. & Cmty. Supervision*,
16 F.4th 67 (2d Cir. 2021) ........................................................ 4, 14-15

*Guillory v. Ellis*,
No. 11-cv-600, 2014 WL 4365274 (N.D.N.Y. Aug. 29, 2014).............. 17

*Harris v. Moore*,
No. 04-cv-00073, 2007 WL 4380277 (E.D. Mo. Dec. 13, 2007)........... 14

**Cases**          **Page(s)**

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010) .................................................................. 9

*Jolly v. Coughlin*,
   76 F.3d 468 (2d Cir. 1996) ................................................................ 12

*Kravitz v. Fisher*,
   No. 12-cv-1011, 2014 WL 4199245 (N.D.N.Y. Aug. 22, 2014) ............ 16

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008) ................................................................. 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .............................................................................. 9

*Midrash Sephardi, Inc. v. Town of Surfside*,
   366 F.3d 1214 (11th Cir. 2004) .......................................................... 13

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   164 F.3d 736 (2d Cir. 1998) ................................................................. 3

*O'Lone v. Estate of Shabazz*,
   482 U.S. 342 (1987) ............................................................................ 11

*Poupore v. Astrue*,
   566 F.3d 303 (2d Cir. 2009) ......................................................... 8, 12

*Rodriguez v. Hahn*,
   209 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................... 9

*Salahuddin v. Goord*,
   467 F.3d 263 (2d Cir. 2006) .............................................................. 12

*Simmons v. Adamy*,
   987 F. Supp. 2d 302 (W.D.N.Y. 2013) ............................................... 14

*Smith v. Wildermuth*,
   No. 11-cv-0241, 2017 WL 1379368 (N.D.N.Y. Apr. 14, 2017) ............ 16

**Cases** **Page(s)**

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
  450 U.S. 707 (1981) ................................................................ 12

*Turner v. Coupe*,
  655 F. App'x 47 (3d Cir. 2016) ........................................... 14

*Wagnoon v. Gatson*,
  No. 00-cv-3722, 2001 WL 709276 (S.D.N.Y. June 25, 2001) .............. 16

*Westchester Day Sch. v. Village of Mamaroneck*,
  379 F. Supp. 2d 550 (S.D.N.Y. 2005) ............................... 12-13

*Westchester Day Sch. v. Village of Mamaroneck*,
  504 F.3d 338 (2d Cir. 2007) .......................................... 12-13

**Statute**

Religious Land Use and Institutionalized Persons Act,
  42 U.S.C. § 2000cc et seq. ................................................ 12

**Rule**

Fed. R. Civ. P. 56 ........................................................... 9

# PRELIMINARY STATEMENT

On June 4, 2014, plaintiff-appellant Jay Kravitz received nearly an hour to observe the second evening of the two-day Jewish festival of Shavuot at Downstate Correctional Facility, where he was incarcerated at the time. New York State Department of Corrections and Community Supervision (DOCCS) officials provided Kravitz and others observing Shavuot with a kosher meal consisting of Challah bread, grape juice, and a hot entrée. Kravitz had the opportunity to pray to bless the food and to lead congregate prayers before, according to Kravitz, DOCCS officials interrupted the prayers and encouraged the incarcerated individuals to finish and return to their cells.

Kravitz subsequently filed this lawsuit under 42 U.S.C. § 1983, seeking two million dollars in damages based on his claim that DOCCS officials violated his First Amendment right to freely exercise his religion by curtailing his observance of Shavuot. The U.S. District Court for the Southern District of New York (Karas, J.) granted defendants' motion for summary judgment, concluding that the undisputed facts showed that defendants' alleged conduct did not substantially burden Kravitz's religious practice.

This Court should affirm. Kravitz does not dispute the district court's conclusion that most of the named defendants were not personally involved in the alleged deprivations of Kravitz's First Amendment rights. Kravitz also does not dispute that the remaining defendants—David McMahon and Joseph Wassweiler—were not involved with separate alleged violations that occurred on June 3, 2014, the first day of Shavuot.

Kravitz failed to present a triable issue of fact on the only narrow issue remaining, i.e., whether McMahon or Wassweiler violated his First Amendment rights on the second day of Shavuot. As the district court correctly concluded, Kravitz's claim that the Shavuot observance on June 4 was shortened—without any showing of religious need for a longer gathering—does not establish a substantial burden on his religious practice, as required to establish a Free Exercise Clause claim. Contrary to Kravitz's argument, DOCCS's policies, which encourage religious observance and provide for longer Shavuot gathering times, do not create a constitutional entitlement to a longer religious gathering. And even if Kravitz could show a substantial burden, McMahon and Wassweiler would be entitled to qualified immunity.

2

## ISSUE PRESENTED

Whether the district court properly granted summary judgment to defendants on Kravitz's First Amendment claim because there was no genuine issue of material fact showing that defendants' conduct substantially burdened Kravitz's religious practice.

## STATEMENT OF THE CASE

### A. Factual Background[1]

Following a parole violation, Kravitz was incarcerated at Downstate Correctional Facility in June 2014 and registered as a Jewish inmate. As a practitioner of the Jewish faith, Kravitz observes Shavuot, a festival celebrated over two days with meals and prayer services. He requested to participate in Shavuot observances at Downstate in 2014. (*See* Supplemental Appendix (S.A.) 8 (¶¶ 1-2), 19-20 (¶¶ 1-4).)

---

[1] The facts are drawn from the parties' statements under Local Rule 56.1 of the U.S. District Courts for the Southern and Eastern Districts of New York and the admissible evidence provided by the parties. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 296 (2d Cir. 2008); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).

DOCCS's general policies seek to "provide as many opportunities as feasible for the practice of [inmates'] chosen faiths, consistent with the safe and secure operations of the DOCCS correctional facilities." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 74 (2d Cir. 2021) (quotation marks omitted), *cert. denied*, 142 S. Ct. 2676 (2022). In accordance with DOCCS's policies, DOCCS permitted Kravitz to keep his religious prayer books, tallit, and tefillin while incarcerated at Downstate; provided him with kosher meals; and afforded him the opportunity to participate in prayers with a Rabbi who visited Downstate every week. (*See* S.A. 9 (¶¶ 5-6), 19-20 (¶ 3).)

To further facilitate the exercise of religious practices by incarcerated persons, DOCCS also publishes a Religious Holy Day Calendar, which lists the dates of celebrations for various faith groups. (Decl. of Amanda Yoon, Ex. B at p. 3 (July 29, 2014), ECF No. 129-2.) *See Green Haven*, 16 F.4th at 76. DOCCS's 2014 Religious Holy Day Calendar indicated that Shavuot commenced at sundown on June 3 and concluded one hour after sundown on June 5. The calendar further noted that observants of Shavuot should be allowed one hour and forty-five minutes

4

for services and meals on the evenings of June 3 and June 4. DOCCS officials approved an application from Downstate's Rabbi for a special religious event on June 3 and June 4 including festival meals. (S.A. 9 (¶¶ 7-9), 20-21 (¶¶ 5-11); *see* Ex. B at p. 15; Decl. of Amanda Yoon, Ex. C (May 6, 2014), ECF No. 129-3 (application).)

On June 3, 2014, Kravitz left his housing unit at approximately 8 p.m., received a sandwich, and returned to his housing unit at approximately 8:25 p.m. to eat his meal and pray in his cell. (S.A. 9-10 (¶¶ 10, 13-14), 17 (¶ 15), 26 (¶ 28).)

On June 4, 2014, Kravitz left his housing unit at approximately 7:50 p.m. to observe the second day of Shavuot with other incarcerated persons practicing the Jewish faith. They received a more substantial kosher meal consisting of Challah bread, grape juice, and a hot meal. Kravitz prayed to bless the food and prayed while opening the packaging for the meals. Kravitz also began to the lead the group in congregate prayers, although he contends that those prayers were cut short. (S.A. 10 (¶¶ 15, 17), 24-25 (¶¶ 21-24); Decl. of Amanda Yoon, Ex. E, Kravitz Dep. 93-97, 99-100 (Dec. 30, 2020), ECF No. 143-5.) According to Kravitz, Downstate officers told the group they did not have time for prayers and

pushed them to "hurry up." (S.A. 18 (¶ 24).) Kravitz returned to his

housing block at 8:45 p.m. (S.A. 10 (¶ 18), 18 (¶ 24).)

On both June 3 and June 4, 2014, defendants Zupan, Purcell, Baker,

St. Victor, McCray, and Andreu did not supervise, handle, or oversee any

Jewish religious services and were not in the locations of the alleged

constitutional violations on either day. (S.A. 11-13 (¶¶ 19-42).)

## B.  This Proceeding

In November 2016, Kravitz commenced this lawsuit.[2] (Compl.

(Nov. 18, 2016), ECF No. 2.) After Kravitz amended his complaint twice,

the district court dismissed all of Kravitz's claims except for his Free

Exercise Clause claim against Purcell, Baker, Andreu, McCray, St. Victor,

McMahon, Wassweiler, and Zupan.[3] (Op. & Order (Mar. 29, 2019), ECF

---

[2] District court proceedings were repeatedly delayed by Kravitz's
failure to appear at court conferences and to meet court deadlines. The
district court issued several orders to show cause why this action should
not be dismissed for failure to prosecute, but the court ultimately allowed
Kravitz to pursue his claims on the merits. (*See* Order to Show Cause
(Nov. 7, 2019), ECF No. 79; Order to Show Cause (Sept. 25, 2019), ECF
No. 77; Order (July 25, 2019), ECF No. 74; Order to Show Cause (June
20, 2019), ECF No. 71; Order to Show Cause (May 29, 2019), ECF No. 68;
Order (Dec. 15, 2017), ECF No. 35.)

[3] Kravitz's complaint incorrectly spells Wassweiler as "Waseiler."
(*See, e.g.*, S.A. 3 (¶ 10).)

No. 63.) The court afforded Kravitz leave to amend the dismissed claims, but Kravitz filed a Third Amended Complaint (TAC) containing only one cause of action: the claim that defendants' alleged conduct on June 3 and June 4, 2014, violated his right to freely exercise his religion under the First Amendment of the U.S. Constitution. (S.A. 5-6 (¶ 24).) Kravitz sought two million dollars in damages; he did not seek injunctive relief. (S.A. 6 (¶ 26).) After discovery, both Kravitz and defendants moved for summary judgment. (Not. of Mot. (Mar. 10, 2021), ECF No. 127; Pl. Jay S. Kravitz's Not. of Mot. for Summ. J. (Mar. 5, 2021), ECF No. 138.)

In March 2022, the U.S. District Court for the Southern District of New York (Karas, J.) granted defendants' summary judgment motion. First, the court concluded that the undisputed evidence showed that Zupan, Purcell, Baker, St. Victor, McCray, and Andreu were not personally involved in the alleged deprivations of Kravitz's First Amendment rights. (Op. & Order 15 (Mar. 14, 2022) (2022 Order), ECF No. 151.) Accordingly, they were each entitled to summary judgment.[4]

---

[4] On appeal, Kravitz has abandoned his claims against Zupan, Purcell, Baker, St. Victor, McCray, and Andreu by failing to challenge (*see* Br. for Appellant (Br.) at 17-19) the district court's conclusion that there was no triable issue of fact concerning their personal involvement

(*continued on the next page*)

Second, the court concluded that the remaining defendants—McMahon and Wassweiler—were entitled to summary judgment on Kravitz's Free Exercise Clause claim. As a threshold matter, the court observed that Kravitz claimed that McMahon and Wassweiler were involved only in the events of June 4. Accordingly, the court limited its analysis to the evidentiary record concerning that date. (2022 Order at 19-20.) Based on that record, the court found no genuine dispute of material fact concerning whether McMahon's and Wassweiler's alleged conduct substantially burdened Kravitz's religious practice. The court explained that while the Shavuot celebration had been shortened, Kravitz had been allowed to participate in the celebration and there was no showing that the permitted time was inadequate to celebrate Shavuot. (*See* 2022 Order at 22.)

The clerk of court then entered judgment in favor of defendants, and Kravitz filed a timely notice of appeal. (Judgment (Mar. 14, 2022), ECF No. 152; Not. of Appeal (Apr. 8, 2022), ECF No. 153.)

---

in the alleged constitutional violations, *see Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

## STANDARD OF REVIEW

This Court reviews de novo a district court's order granting a motion for summary judgment. *See Davidson v. Scully*, 114 F.3d 12, 14 (2d Cir. 1997).

Summary judgment is required where there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a genuine dispute of material fact by showing that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To avoid summary judgment, the nonmoving party must present admissible evidence showing more than "some metaphysical doubt" as to the material facts and may not rely solely on the allegations in the complaint. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). While "special solicitude" is afforded to pro se litigants opposing summary judgment, *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), such litigants are not relieved of the requirements of opposing summary judgment, *see Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002).

9

## SUMMARY OF ARGUMENT

The district court correctly granted summary judgment to McMahon and Wassweiler because Kravitz did not raise a genuine dispute of material fact as to whether their conduct substantially burdened his religious practice.

The undisputed evidence showed that Kravitz received nearly an hour to observe Shavuot on June 4, 2014—the only day on which he alleges McMahon and Wassweiler were personally involved in events regarding the holiday. Kravitz's celebration of Shavuot on that day included congregating with other Jewish inmates to eat a substantial kosher meal and praying during that time. The Shavuot observance did not substantially burden Kravitz's religious practice given that he had the opportunity to pray during the fifty-five-minute gathering and in his cell after he returned. Kravitz made no showing of religious need for a longer gathering.

Kravitz is mistaken to rely on DOCCS's 2014 Religious Holy Day Calendar, which provided for one hour and forty-five minutes for Shavuot gatherings consistent with DOCCS's general policy of providing as many opportunities as feasible for religious observance. That administrative guidance does not establish a constitutional minimum length for religious

observance. Accordingly, receiving less than one hour and forty-five minutes for a religious gathering does not establish a First Amendment violation.

Finally, even if this Court disagreed with the district court's assessment of substantial burden, McMahon and Wassweiler would be entitled to qualified immunity because no clear decisional law of the Supreme Court or this Court establishes the purported right that Kravitz claims here.

## ARGUMENT

### THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT TO MCMAHON AND WASSWEILER ON KRAVITZ'S FIRST AMENDMENT CLAIM

Incarcerated individuals retain rights afforded by the First Amendment, but limitations on those rights "arise both from the fact of incarceration and from valid penological objectives." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Accordingly, incarcerated individuals' free exercise rights are more constrained than those rights of nonincarcerated persons. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003); *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990).

11

To establish a Free Exercise Clause claim, a plaintiff must make a threshold showing that "the disputed conduct substantially burdens his sincerely held religious beliefs."[5] *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (quotation marks omitted); *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). A "substantial burden" exists when "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."[6] *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quotation & alteration marks omitted); *accord Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 717-18 (1981). Mere inconvenience to the adherent is insufficient to establish a substantial burden. *Westchester*

---

[5] This Court has not squarely decided whether the substantial burden requirement continues to apply following the Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). *See Brandon*, 938 F.3d at 32 n.7. Kravitz has not challenged the application of the substantial burden requirement below or in his opening brief and has thus waived this argument. *Poupore*, 566 F.3d at 306. This Court has repeatedly declined to reconsider its substantial burden precedents when the issue has not been squarely raised on appeal. *See Brandon*, 938 F.3d at 32 n.7.

[6] This Court's precedents under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., are instructive in the First Amendment context because they apply the same "substantial burden" test. *See Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007); *Salahuddin*, 467 F.3d at 273-75.

*Day Sch. v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005); *see Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1228 (11th Cir. 2004). And when an adherent has a "ready alternative" to engage in the religious practice at issue, his "religious exercise has not been substantially burdened." *Westchester Day Sch.*, 504 F.3d at 352.

Here, the district court correctly concluded that Kravitz failed to show that McMahon's or Wassweiler's asserted conduct substantially burdened his religious exercise. (*See* 2022 Order at 22-24.) The undisputed evidence showed that Kravitz received nearly an hour to observe Shavuot on June 4, 2014.[7] During that time, he and other incarcerated persons observing Shavuot received a substantial kosher group meal consisting of Challah bread, grape juice, and a hot meal. He prayed to bless the food and prayed while opening the packaging for the meals. Kravitz also led the group in congregate prayers, although he contends that those prayers were cut short. (S.A. 10 (¶¶ 15, 17-18),24-25 (¶¶ 21-23); Kravitz Dep. 93-97, 99-100.) Kravitz thus received an opportunity to observe Shavuot on

---

[7] As the district court observed, and Kravitz does not dispute, the claims against McMahon and Wassweiler are limited to the events of June 4, 2014. (*See* 2022 Order at 20.)

June 4, 2014, and the facts here are far removed from those in cases where a plaintiff was entirely precluded from observing an important religious holiday. *See, e.g.*, *Ford*, 352 F.3d at 586-87.

At most, Kravitz shows that his time to observe Shavuot was shortened, but such scheduling changes alone are inadequate to establish a substantial burden. Absent a showing of religious need, reasonable limitations on the length of religious services do not constitute a substantial burden so long as services are regularly available. For instance, in *Green Haven*, this Court concluded that the plaintiffs were unlikely to establish a substantial burden on their religious practice merely by showing that DOCCS changed the schedule for a religious gathering—from six hours on the weekend to two hours on a weekday—without other evidence that the scheduling change substantially burdened their religious practice. S*ee* 16 F.4th at 85.[8]

_____

[8] *See also Harris v. Moore*, No. 04-cv-00073, 2007 WL 4380277, at \*10 (E.D. Mo. Dec. 13, 2007) (restriction to ninety minutes of religious services a week was not substantial burden under RLUIPA), *aff'd*, 347 F. App'x 271 (8th Cir. 2009); *see also Turner v. Coupe*, 655 F. App'x 47, 48-49 (3d Cir. 2016) (limitation on religious classes Monday through Thursday not a substantial burden under RLUIPA where Friday services are available); *Simmons v. Adamy*, 987 F. Supp. 2d 302, 309 (W.D.N.Y. 2013) ("[L]imits on an inmate's religious exercise which prevent attendance at

(*continued on the next page*)

Kravitz has failed to show a religious need for a Shavuot observance longer than the one he received. Although establishing a substantial burden is "not a particularly onerous task," *see Brandon*, 938 F.3d at 32 (quotation marks omitted), Kravitz did not present any evidence to suggest that the fifty-five minutes he was afforded was inadequate to observe Shavuot or that Shavuot observances must be of a particular duration. Kravitz is mistaken to rely on DOCCS's 2014 Religious Holy Day Calendar, which allocated an hour and forty-five minutes for Shavuot observances. *See* Br. at 15, 19. DOCCS's policies seek to provide as many opportunities as possible for religious observance consistent with institutional security concerns. *See Green Haven*, 16 F.4th at 74. But they do not set a constitutional floor for the length of religious observances. Accordingly, receiving less than the time allotted by the Religious Holy Day Calendar does not constitute a First Amendment violation here, where Kravitz failed to provide evidence that opportunity he received to observe Shavuot substantially burdened his religious practices.

---

classes or services once a week or less have routinely been held not to comprise a burden on religious exercise.").

15

Kravitz's claim that "the prayer service was stopped" (Br. at 16), is also inadequate to show a substantial burden. As an initial matter, Kravitz misapprehends the burden of proof when he suggests that defendants were obliged to show that the opportunities afforded to him "compl[y] with his religious beliefs." *Id.* Instead, Kravitz must make a threshold showing that defendants have substantially burdened his religious practice. *See Brandon*, 938 F.3d at 32. He has not done so here. Kravitz ignores the undisputed fact that he was able to pray and bless the food and that he had an opportunity to continue prayers after returning to his cell. *See* Br. at 9. See *supra* at 5, 13. Lower courts have regularly concluded that the interruption or cessation of prayers on one occasion is insufficient to state a substantial burden, particularly where a plaintiff has an opportunity to continue prayers.[9] Kravitz failed to show that the observance here should be treated differently.

_____

[9] *See Smith v. Wildermuth*, No. 11-cv-0241, 2017 WL 1379368, at \*5 (N.D.N.Y. Apr. 14, 2017) (attempted interruption of single prayer insufficient to establish substantial burden); *Kravitz v. Fisher*, No. 12-cv-1011, 2014 WL 4199245, at \*12 (N.D.N.Y. Aug. 22, 2014) (preventing group prayer on one occasion during Sukkot, requiring plaintiff to recite pre-meal blessing alone, did not constitute substantial burden); *Wagnoon v. Gatson*, No. 00-cv-3722, 2001 WL 709276, at \*7 (S.D.N.Y. June 25, 2001) (missing "all or part of one midday prayer did not substantially
(continued on the next page)

Finally, even if Kravitz had shown that McMahon's and Wassweiler's conduct substantially burdened his religious practice, his claims would still fail because McMahon and Wassweiler are entitled to qualified immunity. (*See* 2022 Order at 19-20.) Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Here, prior decisions holding that prison officials having shortened the duration of a religious observance, without more, do not substantially burden religious exercise (see *supra* at 14 & n.8) demonstrate that Kravitz failed to identify a clearly established constitutional right of which McMahon and Wassweiler should have known they were violating.

Kravitz is mistaken to claim that "an unambiguous regulation from DOCCS" can constitute clearly established law for purposes of qualified immunity. *See* Br. at 19. As an initial matter, Kravitz mischaracterizes

---

burden" plaintiff's free exercise rights); *Guillory v. Ellis*, No. 11-cv-600, 2014 WL 4365274, at *10-13 (N.D.N.Y. Aug. 29, 2014) (abbreviated Purim celebration did not substantially burden plaintiff's religious exercise when the service occurred, prayers were said, and a meal was provided, even if "too quickly for plaintiff's liking").

17

DOCCS's Religious Holy Day Calendar, which is not a regulation and is not subject to the processes of New York's State Administrative Procedure Act. In any event, DOCCS's Religious Holy Day Calendar could not constitute clearly established law for purposes of qualified immunity, regardless of the force it carries under state law. This Court looks to "whether the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right in question" to assess whether a defendant is entitled to qualified immunity. *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). Kravitz has identified no such decision, and defendants are aware of none.

## CONCLUSION

For the foregoing reasons, this Court should affirm the March 14, 2022, judgment.

Dated:  New York, New York
December 7, 2022

Respectfully submitted,

LETITIA JAMES
*Attorney General*
*State of New York*
Attorney for Appellees


By:  */s/ Mark S. Grube*
MARK S. GRUBE
Assistant Solicitor General

BARBARA D. UNDERWOOD
*Solicitor General*
JUDITH N. VALE
*Deputy Solicitor General*
MARK S. GRUBE
*Assistant Solicitor General*
*of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-8028

19

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Alenette B. Jordan, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 3,633 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and Local Rule 32.1.

 /s/ *Alenette B. Jordan*

# SUPPLEMENTAL APPENDIX

# TABLE OF CONTENTS

PAGE

Third Amended Complaint, dated Dec. 4, 2019 ............................................SA1

Defendants' Rule 56.1 Statement in Support of Motion for Summary
Judgment, dated Mar. 10, 2021 ....................................................................SA8

Plaintiff Jay S. Kravitz's Rule 56.1 Statement of Material Facts
as to Which There Is No Genuine Issue to Be Tried, in Support of
Plaintiff's Motion for Summary Judgment, dated Mar. 9, 2021 ................SA15

Defendants' Response to Plaintiff's Statement of Material Facts in
Support of Plaintiff's Motion for Summary Judgment, dated Apr. 9, 2021 .....SA19

i

RECEIVED
SDNY DOCKET UNIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK 2019 DEC -5 PM 3: 26

---

JAY S. KRAVITZ,

                    Plaintiff,                          **THIRD AMENDED**
                                                        **COMPLAINT**

        -vs-

                                                        16-CV-8999 (RMK)

NYS DEPARTMENT OF CORRECTIONS COMMISSIONER
ANTHONY ANNUCCI, EX OFFICIO, S. PURCELL, A.
BAKER, L. ANDREU, D. MCCRAY, G. ST. VICTOR,
D. MCMAHON, OFFICER WASEILER, AND SGT.
ZUPAN,

                    Defendants.

---

Plaintiff, JAY S. KRAVITZ, *pro se,* as and for his Third Amended Complaint against

Defendants NYS DEPARTMENT OF CORRECTIONS COMMISSIONER ANTHONY

ANNUCCI, EX OFFICIO, S. PURCELL, A. BAKER, L. ANDREU, D. MCCRAY, G. ST.

VICTOR, D. MCMAHON, OFFICER WASEILER, AND SGT. ZUPAN (hereinafter collectively

referred to as "Defendants"), hereby alleges the following:

## INTRODUCTION

1. Plaintiff, JAY S. KRAVITZ, *pro se,* brings this action against the Defendants for

violation of his right to freely practice his religion while incarcerated at New York State

Department of Corrections' Downstate Correctional Facility including the violation of the

Plaintiff's constitutional rights, pursuant to 42 U.S.C. § 1983, including Plaintiff's rights

1

pursuant to the First Amendment of the United States Constitution to freedom of religion.
Plaintiff is also seeking to impose personal liability upon the Defendants for actions taken under
color of state law.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to 42 U.S.C. § 1983 and thus is appropriately in the
United States District Court pursuant to 28 U.S.C. § 1343(a)(3), (4) as well as 28 U.S.C. § 1331.
The state law claims are brought pursuant to the supplemental jurisdiction provided by 28
U.S.C. § 1367.  Venue is proper in the Southern District of New York as the actions complained
of herein took place at the New York State Department of Corrections' Downstate Correctional
Facility in Fishkill in Dutchess County, New York.

## THE PARTIES

3.     At all relevant times herein, the Plaintiff Jay S. Kravitz was and still is a resident of the
County of Greene, State of New York, and is a citizen of the United States of America.

4.   Defendant NYS Department of Corrections Commissioner Anthony Annucci, Ex Officio
is the acting commissioner of the NYS Department of Corrections.

5.   A. BAKER was an officer and employee of the NYS Department of Corrections at the
Fishkill Correctional Facility during the wrongful actions stated herein.

6.   L. ANDREU was an officer and employee of the NYS Department of Corrections at the
Fishkill Correctional Facility during the wrongful actions stated herein.

7.   D. MCCRAY was an officer and employee of the NYS Department of Corrections at the
Fishkill Correctional Facility during the wrongful actions stated herein.

2

**SA2**

8. G. ST. VICTOR was an officer and employee of the NYS Department of Corrections at the Fishkill Correctional Facility during the wrongful actions stated herein.

9. D. MCMAHON was an officer and employee of the NYS Department of Corrections at the Fishkill Correctional Facility during the wrongful actions stated herein.

10. OFFICER WASEILER was an officer and employee of the NYS Department of at the Fishkill Correctional Facility Corrections during the wrongful actions stated herein.

11. SGT. ZUPAN was an officer and employee of the NYS Department of Corrections at the Fishkill Correctional Facility during the wrongful actions stated herein.


## FACTUAL ALLEGATIONS

12. In June 3, 2014, the Plaintiff was incarcerated in the New York State Downstate Correctional facility, in Fishkill, New York.

13. The Plaintiff is a member and practitioner of the Jewish faith.

14. When the Plaintiff arrived at the Fishkill Correctional Facility, he gave notice to the receiving officers that he practiced the Jewish faith and wished to observe the faith while incarcerated at the facility (when he arrived at "draft"). The plaintiff further showed to officers, employees and agents of the facility the Jewish ritual objects that he had brought with him (a prayer shawl ["*tallit*"] and phylacteries [" *tefillin*"]). In addition, the Plaintiff provided that he wished to observe the upcoming Jewish holiday of *Shevuout*, and his name was added to the list of inmates who would be observing the holiday at the facility.

15. In 2014, the holiday of *Shevuot*, one of the three major festivals in the Jewish calendar, took place on June 3.

3

**SA3**

16. On Tuesday, June 3, 2014, the Plaintiff, who had signed to be included in the observance of the *Shevuot* holiday for the two nights of the holiday, along with other inmates who were designated to be observing the *Shevuot* were not brought to the dining hall but were brought to a staging area to arrange for their prayers and holiday dinner. Defendants PURCELL, BAKER, ANDREU, MCCRAY and ST. VICTOR were assigned to the staging area and then present.

17. At approximately 8:00 p.m. immediately before sundown and the commencement of the Holiday, the Plaintiff and the other Jewish inmates with him at the check-in point were literally tossed by the aforementioned Defendants peanut butter sandwiches in brown bags and the Defendants informed them that this was their kosher meals. The Plaintiff and the other Jewish inmates were further told by the Defendants that they would not be able to congregate as a group for prayers, that they would not be taken to observe the Holiday that night.

18. After the Plaintiff was deprived of the exercise of his right to observe his religious holiday, he immediately wrote a letter to the facility assistant superintendent, deputy of programs and the chaplain of the religious programs. The chaplain came to the plaintiff's bloc and assured him that on the second night of the holiday he would be permitted his religious observance.

19. On Wednesday, June 4, 2014, the equally important second night of the Holiday, the Plaintiff and the other Jewish inmates who were scheduled to observe the Holiday were on this night escorted by the Defendants MCMAHON, WASEILER, and ZUPAN  the area supervisor) who were assigned to the auxiliary dining hall, and provided kosher meals. The Plaintiff had been asked by the cadre for the Rabbi and liaison to the Jewish inmates at the facility to lead the prayers that night. The Plaintiff then began to lead the group in Jewish prayers. At the inception of the prayers, the Defendants abruptly interrupted the prayers and commanded them to

4

**SA4**

stop.  The Defendants then told the Plaintiff  that they "didn't have time for their prayers" because they had "things to do" "just hurry up, eat and let's go!", thus forbade them any further religious observance.

20.    Upon the aforementioned denial of the Plaintiff's right to practice his faith while in the custody of the New York State Department of Corrections' Fishkill facility, the Plaintiff promptly submitted a grievance to the Grievance Supervisor at the facility.

21.    The Plaintiff was thereafter informed that his complaint regarding his denial of the practice of his faith at the facility was one that could not be resolved through the grievance procedure.

22.    It is significant that the Plaintiff had previously filed suit for the denial of his right to practice his faith while at the New York State Department of Corrections' Riverview Facility where he was previously incarcerated on the instant offense, but was not permitted to proceed because he had not pursued the grievance procedure regarding the denial of his right to practice his faith.  Nonetheless, the Defendants were thus on formal notice about their ongoing practice regarding the denial of the Plaintiff and other Jewish inmates the right to practice their faith.

### AS AND FOR A FIRST CAUSE OF ACTION-42 U.S.C. § 1983 VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREEDOM OF RELIGION

23.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" thru and inclusive of "22" above, as if same were fully set forth at length herein.

24. The Defendants' above-described deprivation of the Plaintiff of his right to practice his

5

**SA5**

religion was a violation of his constitutionally guaranteed right to be free of any prohibition on

the free exercise of his religion, as provided in the First Amendment of the United States

Constitution, as made applicable to the States by operation of the Fourteenth Amendment.

25.   By reason of said deprivation of Plaintiff's constitutional right to freely exercise his

religion, Plaintiff has suffered serious personal injuries, humiliation and emotional distress.

26.   By reason of this violation of Plaintiff's constitutional rights, Plaintiff has been

damaged in the sum of $2,000,000.00.

27.   Plaintiff seeks an award of counsel fees pursuant to 42 U.S.C. § 1988.

### JURY DEMAND

28.   Plaintiff demands a trial by jury of all issues in this case.

### PUNITIVE DAMAGES

29. The actions of the individual Defendants were undertaken herein willfully, wantonly,

intentionally and with reckless disregard for the rights of the Plaintiff.

30. As to each of the above-described causes of action, Plaintiff further seeks an award of

punitive damages as against these individual New York State Department of Corrections officers

and employees in the sum of $2,000,000.00.

**WHEREFORE**, Plaintiff, Jay S. Kravitz, seeks judgment as against the Defendants, as

follows:

a)   in the sum of $2,000,000.00, as against the Defendants on the first cause of action,

6

**SA6**

together with an award of counsel fees; and

b)  in the sum of $2,000,000.00 as punitive damages against the New York State

Department of Corrections officers and employees

Dated:        December 4, 2019
              Earlton, NY

                                    Respectfully submitted

                                    JAY s. KRAVITZ
                                    Jay S. Kravitz
                                    Plaintiff pro se
                                    P.O. Box 106
                                    Earlton, NY 12058
                                    (518) 567-4026

7

**SA7**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY KRAVITZ,

                              Plaintiff,

        - against -

ANTHONY J. ANNUCCI, et al.,

                              Defendants.

No. 16 Civ. 8999 (KMK)

**DEFENDANTS' RULE 56.1
STATEMENT IN SUPPORT OF
MOTION FOR
SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1, Defendants Luis Andreu, Adolphus Baker, David McCray, Dennis McMahon, Samuel Purcell, Gregory St. Victor, Joseph Wassweiler (sued as "Waseiler"), and John Zupan (hereinafter "Defendants"), by their attorney, Letitia James, state that as to the following facts, there is no genuine issue to be tried:

1.       Plaintiff is a member of Jewish faith and was a member of the Jewish faith in 2014. (Complaint, filed June 12, 2017 (Docket No. 2) ("Compl."), ¶ 13; Transcript of the deposition of Plaintiff taken on December 30, 2020 annexed to the Declaration of Amanda Yoon ("Yoon Decl.") as Exhibit A, pp. 34,35).

2.       In June of 2014, Plaintiff Jay Kravitz was an inmate at Downstate Correctional Facility (hereinafter "Downstate"). (Compl., ¶ 12; Yoon Decl., Exhibit A, p. 49).

3.       Plaintiff was admitted to Downstate in May of 2014. (Yoon Decl., Exhibit A, p. 49).

4.       At the time Plaintiff was admitted to Downstate, he registered himself as Jewish inmate and was allowed to keep his religious prayer books, Talmud and other religious texts. (Yoon Decl., Exhibit A, pp. 49, 50, 63).

5.      While Plaintiff was housed in Downstate, he was provided with Kosher meals. (Yoon Decl., Exhibit A, p.51).

6.      While Plaintiff was housed in Downstate, Rabbi Jacobs came to Downstate once a week for two hours to pray with and provide religious guidance to Jewish inmates. (Yoon Decl., Exhibit A, p. 53).

7.      Shevuot is a Jewish holiday, celebrated over two days with meals consisting of Challah bread, Kosher meal, and grape juice. (Yoon Decl., Exhibit A, pp.43, 45-46; DOCCS Shevuot Holiday Description annexed to Yoon Decl., Exhibit D at DEFENDANTS 008).

8.      Under the 2014 New York State Department of Corrections and Community Supervision ("DOCCS") Holy Day Calendar, Jewish inmates were scheduled to have 1 hour and 45 minutes for services and meals on the evening of June 3rd and 4th of 2014 for Shevuot. (2014 DOCCS Holy day Calendar annexed to Yoon Decl., Exhibit B at DEFENDANTS 0034).

9.      Rabbi Jacobs submitted a "special event packet", an application for a special religious event, for Shevuot, and the Jewish inmates were scheduled to have festive meals at # 4 Dining Room from 8 p.m. to 10 p.m. on June 3, and June 4, 2014.  (Special Event Packet annexed to Yoon Decl., Exhibit C at DEFENDANTS 003-007).

10.     On June 3, 2014, the first day of Shevuot, at approximately 8 p.m., Plaintiff was released from his housing block, Block 3a, for Jewish services. (June 3, 2014 Logbook for Housing Block 3a for 3 p.m. to 11 p.m. shift annexed to Yoon Decl., Exhibit E at  DEFENDANTS 0017; Yoon Decl. Exhibit A., p.64).

11.     Block 3a is one of the housing blocks in Complex 3. (Declaration of Gregory St. Victor (St. Victor Decl.), ¶ 4).

12.     Plaintiff walked to the East Lobby, an area where inmates from the housing units in Complex 3 are sent and gathered before the inmates are escorted to other parts of the facility. (Yoon Decl., Exhibit A, pp. 65-66, 73,74;  Declaration of Samuel Purcell ("Purcell Decl."),¶ 10; Declaration of Adolphus Baker ("Baker Decl."), ¶8; (Declaration of Gregory St. Victor ("St. Victor Decl."), ¶ 9; Declaration of David McCray ("McCray Decl."), ¶ 7; Declaration of Luis Andreu ( "Andreu Decl."), ¶ 8).

13.     On June 3, 2014, sometime between 8:00 p.m. and 8:25 p.m., Plaintiff was given a Kosher meal. (Compl., ¶ 17; Yoon Decl., Exhibit A, p. 67, 69-70; Yoon Decl., Exhibit E, DEFENDANTS 0017).

14.     At approximately 8:25 p.m., Plaintiff walked back from East Lobby to his housing block. (Yoon Decl., Exhibit A., p. 83; Yoon Exhibit E at DEFENDANTS 0017).

15.     On June 4, 2014, the second day of Shavuot, at around 7:50 p.m., Plaintiff was released from his housing block, Block 3a, for Jewish services. ( June 4, 2014 Logbook for Housing Block 3a for 3 p.m. to 11 p.m. shift annexed to Yoon Decl., Exhibit F, DEFENDANTS 0019-0020).

16.     He was escorted to #4 Dining Room.  (Yoon Decl., Exhibit A, p. 86-87; Yoon Decl., Exhibit C, DEFENDANTS 0003-0007).

17.     Plaintiff was able to congregate with other Jewish inmates for prayer and eat a festive meal consisting of Challah bread, grape juice, and Kosher meal in # 4 Dining Room. (Yoon Decl., Exhibit A, p. 88-89, 93-97; Yoon Decl., Exhibit C at DEFENDANTS 0003-0007).

18.     Plaintiff returned to his housing block at approximately 8:45 p.m. (Yoon Decl., Exhibit F, DEFENDANTS 0019-0020).

**SA10**

19.   Defendant Zupan did not work at Downstate on June 3, 2014. (Declaration of John Zupan ("Zupan Decl."),¶ 4).

20.   Defendant Zupan worked as a kitchen Sergeant on June 4, 2014 from 12:30 p.m. to 8:30 p.m. (Id. at ¶ 5).

21.   As a Sergeant for the kitchen area, which prepared food for the four dining rooms in the complexes, Defendant Zupan's job duties were to make sure everything at the kitchen area was running smoothly and that the staff and inmates at the kitchen remained safe and secure.  (Id. at ¶ 6).

22.   On June 4, 2014, Defendant Zupan left the kitchen area at approximately 5:00 p.m., and supervised correction officers running medication and other escorting duties until he was relieved at 8:30 p.m. (Id. at ¶ 7).

23.   On June 4, 2014, Defendant Zupan was not assigned to handle or supervise a Jewish religious service, or any other religious service task. (Id. at ¶ 8).

24.   On June 4, 2014, Defendant Zupan was not in #4 Dining Room, and did not supervise any correction officers in #4 Dining Room. (Id. at ¶ 11).

25.    Defendant Purcell was assigned to the Complex 3 Recreation Room for the 1 p.m. to 9 p.m. shift on June 3 and June 4, 2014. (Purcell Decl., ¶ 4).

26.   Complex 3 Recreation Room is the gym that is used by inmates housed in the housing units in Complex 3. (Id. at ¶ 4).

27.   As a Correction Officer for Complex 3 Recreation Room, Defendant Purcell's job duties were to ensure the security, custody and control of the inmates who were using the Complex 3 Recreation Room. (Id. at ¶ 7).

28.   On June 3, and June 4, 2014, Defendant Purcell was not assigned to and did not

4

**SA11**

oversee a Jewish religious service and did not work in East Lobby and #4 Dining Room. (Id. at ¶¶ 8-11).

29.     Defendant Baker was assigned to #3 Dining Room/Medication for the 1 p.m. to 9 p.m. shift on June 3 and June 4, 2014. (Declaration of Adolphus Baker ("Baker Decl.), ¶4.).

30.     As a Correction Officer for #3 Dining Room/Medication, Defendant Baker's job duties were to ensure the security, custody and control of the inmates who were eating meals in #3 Dining Room for dinner until 6:30 p.m. and to escort inmates from housing units in Complex 3 to medications thereafter. (Id. at ¶ 5).

31.     On June 3 and June 4, 2014, Defendant Baker was not assigned to and did not handle a Jewish religious service, or any other religious service task and did not work in East Lobby and #4 Dining Room. (Id. at ¶¶6-9).

32.     Defendant St. Victor was assigned as a "first officer" for the Housing Block 3a, one of the housing blocks in Complex 3, for the 3:00 p.m. to 11:00 p.m. shift on June 3 and June 4, 2014. (Declaration of Gregory St. Victor (St. Victor Decl.), ¶ 4).

33.     As a Correction Officer for Housing Block 3a, Defendant St. Victor's job duties were essentially to open and close gates and individual cells in Housing Block 3a and to ensure the security, custody, and control of the inmates housed in Housing Block 3a. (St. Victor Decl., ¶5; Yoon Decl., Exhibit A, pp. 77-78).

34.     On June 3 and June 4, 2014, during his work hours, Defendant St. Victor did not leave Housing Block 3a, and did not escort any inmates to East Lobby or other parts of the facility. (St. Victor Decl., ¶5; Yoon Decl., Exhibit A, pp. 77-78).

35.     On June 3, and June 4, 2014, Defendant St. Victor  was not assigned to handle a

**SA12**

Jewish religious service, or any other religious service task and did not work in #4 Dining Room and did not remain in East Lobby after dropping off inmates there. (St. Victor Decl., ¶¶ 7-10).

36.     Defendant McCray was not at Downstate on June 4, 2014 after 3 p.m. (Declaration of David McCray ("McCray Decl."), ¶ 3).

37.     Defendant McCray was assigned to Complex 3 Patrol for 7:00 a.m. to 3:00 p.m. and 3:00 p.m. to 11:00 p.m. shifts on June 3, 2014 and was assigned to Complex 3 Patrol for the 7:00 a.m. to 3:00 p.m. shift on June 4, 2014. (Id.).

38.     On June 3, 2014, as a Correction Officer for Complex 3 Patrol, Defendant McCray's job duties were to escort inmates housed in Complex 3 Housing Unit to Office of Mental Health and other parts of the facility. (Id. at ¶4).

39.     On June 3, and June 4, 2014, Defendant McCray was not assigned to and did not handle a Jewish religious service, or any other religious service task and did not work in East Lobby and #4 Dining Room. (Id. at ¶¶ 6-8).

40.     Defendant Andreu was assigned to Medication/ Keeplock/ Recreation on June 3, and June 4, 2014 for the 1 p.m. to 9 p.m. shift. (Declaration of Luis Andreu ("Andreu Decl."), ¶4).

41.     As a Correction Officer for Medication/ Keeplock/ Recreation, Defendant Andreu's job duties were to ensure the security, custody and control of the Keeplock inmates who were using outdoor recreation area, assist dining services at #3 Dining Room from 4 p.m. to 5 p.m., and escort inmates housed in the housing units in Complex 3 to medications. (Id. at ¶4).

42.     On June 3, and June 4, 2014, Defendant Andreu was not assigned to and did not handle a Jewish religious service, or any other religious service task and did not work in East Lobby and #4 Dining Room. (Id. at ¶ 6-9).

**SA13**

Dated:  New York, New York
        March 10, 2021

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        <u>Attorney for Defendants</u>

                                By:     _____/s/_____
                                        Amanda Yoon
                                        Assistant Attorney General
                                        28 Liberty Street
                                        New York, New York 10005
                                        (212) 416-8606
                                        Amanda.Yoon@ag.ny.gov

**SA14**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————

JAY S. KRAVITZ,

                Plaintiff,

       -vs-

NYS DEPARTMENT OF CORRECTIONS COMMISSIONER
ANTHONY ANNUCCI, EX OFFICIO, S. PURCELL, A.
BAKER, L. ANDREU, D. MCCRAY, G. ST. VICTOR,
D. MCMAHON, OFFICER WASEILER, AND SGT.
ZUPAN,

                Defendants.

——————————————————————

16-CV-8999 (RMK)

**PLAINTIFF JAY S. KRAVITZ' RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO
GENUINE ISSUE TO BE TRIED, IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1.      In June 3, 2014, The Plaintiff was incarcerated in the New York State Downstate Correctional
facility, in Fishkill, New York. Affidavit of Plaintiff Jay S. Kravitz, Para. 3.

2.      The Plaintiff is a member and practitioner of the Jewish faith. Aff of Plf, Para. 4.

3.      When the Plaintiff I arrived at the Downstate Correctional Facility, he gave notice to the
receiving officers that he practiced the Jewish faith and wished to observe the faith while incarcerated
at the facility (when he arrived at "draft"). He also showed to the officers and employees at the facility
the Jewish ritual objects that he had brought with him (a prayer shawl ("tallit") and phylacteries ("
tefillin"). Aff of Plf, Para. 5

4.      The Plaintiff also told the officers and employees that he wanted to observe the upcoming
Jewish holiday of Shevuot, and requested that his name be added to the list of inmates who would be
participating in the holiday at the facility. Aff of Plf, Para. 6.

5.      The holiday of Shevuot is one of the three major festivals in Judaism, along with the better known Passover. The Book of Exodus 23:14-19; ~~Affidavit~~ of Rabbi Zoe B. Zack, ~~Aff~~ *BY AFFORMation on Phone, or any Rabbi*

6.      Indeed, it can be said that Shevuot is the most important of all the major Jewish Festivals for on this holiday we celebrate the giving of the Torah or Law on Mount Sinai. ~~Affidavit~~ of Rabbi Zoe B. Zack, *BY AFFORMATION on Phone, or any Rabbi*; Aff of Plf, Para. 7.

7.      Shevuot is observed by both a festive meal as well as a prayer service. ~~Affidavit~~ of Rabbi Zoe B. Zak, ~~Aff~~; Aff of Plf, Para. 8. *BY AFFORMation on phone or any Rabbi*

8.      Shevuot was recognized as a Jewish holiday by the NYS Department of Corrections and Community Supervision and that Holiday will begin at sundown on June 3 and continue until sundown on June 5.  Exhibit A; NYS DOCCS RELIGIOUS DAY CALENDER 2014 Cover sheet and p. 14.

9.      In 2014, the DOCCS provided that Jewish affiliated inmates should be provided at least 1 hour and 45 minutes for the observance of Shavuot.  Exhibit A.

10.     In 2014, the Jewish Chaplain affiliated with the Downstate Correctional Facility duly filled out a Special Events Packet providing that the Jewish affiliated inmates celebrate the Holiday of Shevuot from 8-10 pm on the eveinings of June 3 and June 4 in 4 Dining Room and that it include special food.  Exhibit B.

11.   The Jewish Chaplain's aforementioned request was approved.  Exhibit B.

12.   The NYX DOCCS provided that in 2014 inmates observing Shavuot shall be provided a special meal for the Holiday.  Exhibit C.

13.     On Tuesday, June 3, 2014 at approximately 8 p.m., the Plaintiff, along with the other inmates who were designated to be observing the Shevuot was not brought to the dining hall but instead taken to a staging area to arrange for the prayers and holiday dinner. Aff of Plf, Para. 11; Exhibit D.

**SA16**

14.     Defendants PURCELL, BAKER, ANDREU, MCCRAY and ST. VICTOR were assigned to the staging area and then present. Aff of Plf, Para. 10.

15.     At approximately 8:00 p.m. immediately before sundown and the commencement of the Holiday, the Plaintiff along with the other Jewish inmates at the check-in point were literally tossed by the aforementioned Defendants peanut butter sandwiches in brown bags and the Defendants informed the Plaintiff and the other Jewish inmates that this would by their kosher meals for the Holiday.  The Plaintiff and the inmates pled with the Defendants to be able to observe the holiday, which was to no avail.  The inmates were returned to their cells at approximately 8:20.   Practically all of the time between 8-8:20 p,m. was inclusive of walking to the staging area and back.  Aff of Plf, Para. 11. Exhibit D.

16.     The Plaintiff and the other Jewish inmates were also told by the Defendants that they would not be able to congregate as a group for prayers, that they would not be taken to observe the Holiday that night. Aff of Plf, Para. 11

17.     At no time did the Defendants provide any explanation to the Plaintiff as to why he was denied his right to worship and observe the Shavuot Holiday.  Aff of Plf, Para. 12.

18.     The Plaintiff was very and deeply disappointed by being cruelly denied his right to worship and observe the Shavuout Holiday by the Defendants. Aff of Plf, Para. 12.

19.     After the Plaintiff was deprived of his right to worship and observe Shavuot, he immediately wrote a letter to the facility assistant superintendent, deputy of programs and the chaplain of the religious programs.  Aff of Plf, Para. 13

20.     The chaplain came to the Plaintiff's bloc and assured him that on the second night of the holiday that he would be permitted his religious observance. Aff of Plf, Para. 13.

21.     On Wednesday, June 4, 2014, the equally important second night of Shavuot, the Plaintiff along with the other Jewish inmates who were scheduled to observe the Holiday were on this night escorted by the Defendants MCMAHON, WASEILER, and ZUPAN (the area supervisor) who were assigned to the auxiliary dining hall,  and provided kosher meals. Aff of Plf, Para. 14.

22.     The Plaintiff had been asked by the cadre for the Rabbi and liaison to the Jewish inmates at the facility to lead the prayers that night.  Aff of Plf, Para. 14.

23.     The Plaintiff began to lead the group in Jewish prayers.  Aff of Plf, Para. 14.

24.     At the inception of the prayers, the Defendants abruptly interrupted our prayers and commanded the Plaintiff and the Jewish inmates to stop.  The Defendants then told the Plaintiff that they "didn't have time for our prayers" because they had "things to do" "just hurry up, eat and let's go!", and thus forbade the Plaintiff from any further religious observance. Again the Plaintiff and the Jewish inmates pled to be able to observe the holiday but that was for naught.  They were returned to their cells at approximately 8:45 p.m., approximately half of the time was travelling from and to their cells. Aff of Plf, Para. 14; Exhibit E.

25.     Again, no reason whatsoever was provided to the Plaintiff as to why he was not permitted to worship and observe the second day of this major Jewish Holiday.  Aff of Plf, Para. 15.

26.     After the second night where the Plaintiff was inexplicably and cruelly denied his right tow worship and observe the Shevuot holidI was then even more profoundly upset and deeply disappointed. Aff of Plf, Para. 15.

27.     Upon the denial of the Plaintiff's right to practice his faith while in the custody of the New York State Department of Corrections' Downstate facility, he promptly submitted a grievance to the Grievance Supervisor at the facility.  Aff of Plf, Para. 16; Exhibit F.

Dated: March 8, 2021

_____
JAY S. KRA___
Plaintiff *pro se*
P.O. Box 106
Earlton, NY 12058
(518) 567-4026

**SA18**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY S. KRAVITZ,

                              Plaintiff,                    No. 16 Civ. 8999 (KMK)

          - against -

ANTHONY ANNUCCI, et al.,

                              Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF
MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern

District of New York, Defendants Samuel Purcell, Adolphus Baker, Luis Andreu, David McCray,

Gregory St. Victor, Dennis McMahon, Joseph Wassweiler, and John Zupan ("Defendants"), sued

here in their official capacities, respond to Plaintiff's Statement of Material Facts in Support of

Plaintiff's Motion for Summary Judgment as follows:

1. In June 3, 2014, The Plaintiff was incarcerated in the New York State Downstate

   Correctional facility, in Fishkill, New York. Affidavit of Plaintiff Jay S. Kravitz, Para. 3.

   **RESPONSE**: **Undisputed.**

2. The Plaintiff is a member and practitioner of the Jewish faith. Aff of Plt, Para. 4.

   **RESPONSE**: **Undisputed.**

3. When the Plaintiff I arrived at the Downstate Correctional Facility, he gave notice to the

   receiving officers that he practiced the Jewish faith and wished to observe the faith while

   incarcerated at the facility (where he arrived at "draft"). He also showed to the officers and

   employees at the facility that Jewish ritual objects that he had brought with him (a prayer

   shawl ("tallit") and phylacteries ("tefillin"). Aff of Plf, Para. 5

1

**SA19**

**RESPONSE**: **Undisputed.**

4.  The Plaintiff also told the officers and employees that he wanted to observe the upcoming Jewish holiday of Shevuot, and requested that his name be added to the list of inmates who would be participating in the holiday at the facility. Aff of Plf, Para. 6.

    **RESPONSE**: **Undisputed.**

5.  The holiday of Shevuot is one of the three major festivals in Judaism, along with the better known Passover. The Book of Exodus 23:14-19; By Affirmation on Phone or any Rabbi, Rabbi Zoe B. Zack; Aff of Plf, Para. 7.

    **RESPONSE**: **Plaintiff's affirmation does not support this statement because it lacks foundation. Plaintiff did not submit any of the other cited materials in support of his motion.**

6.  Indeed, it can be said that Shevuot is the most important of all the major Jewish Festivals for on this holiday we celebrate the giving of the Torah or Law on Mount Sinai. By Affirmation on phone or any Rabbi, Rabbi Zoe B. Zack; Aff of Plf, Para. 7.

    **RESPONSE**: **Plaintiff's affirmation does not support this statement because it lacks foundation. Plaintiff did not submit any of the other cited materials in support of his motion.**

7.  Shevuot is observed by both a festive meal as well as a prayer service. By Affirmation on phone or any Rabbi, Rabbi Zoe B.; Aff of Plf, Para. 8.

    **RESPONSE**: **Plaintiff's affirmation does not support this statement because it lacks foundation. Plaintiff did not submit any of the other cited materials in support of his motion.**

**SA20**

8. Shevuot was recognized as a Jewish holiday by the NYS Department of Corrections and Community Supervision and that Holiday will begin at sundown on June 3 and continue until sundown on June 5. Exhibit A; NYS DOCCS RELIGIOUS DAY CALENDAR 2014 Cover sheet and p.14.

   **RESPONSE: Undisputed.**

9. In 2014, the DOCCS provided that Jewish affiliated inmates should be provided at least 1 hour and 45 minutes for the observance of Shavuot. Exhibit A.

   **RESPONSE: This statement constitutes a description of evidence rather than a statement of fact. The DOCCS Religious Holy Day Calendar, attached as Exhibit A to the Yoon Declaration, speaks for itself.**

10. In 2014, the Jewish Chaplain affiliated with the Downstate Correctional Facility duly filled out a Special Events Packet providing that the Jewish affiliated inmates celebrate the Holiday of Shevuot from 8-10 pm on the evenings of June 3 and June 4 in 4 Dining Room and that it include special food. Exhibit B.

   **RESPONSE: This statement constitutes a description of evidence rather than a statement of fact. The cited evidence does not support the statement, because it does not state that the Shevuot celebration would include "special food." See Special Event Packet attached to Yoon Decl. as Exhibit B, DEFENDANTS 0003-0005.**

11. The Jewish Chaplain's aforementioned request was approved. Exhibit B.

   **RESPONSE: Undisputed.**

12. The NYX DOCCS provided that in 2014 inmates observing Shavuot shall be provided a special meal for the Holiday. Exhibit C.

**SA21**

**RESPONSE: The cited evidence does not support the statement. See "Shavuoth Holiday" Description attached to Yoon Decl. as Exhibit C, DEFENDANTS 0008.**

13. On Tuesday, June 3, 2014 at approximately 8 p.m., the Plaintiff, along with the other inmates who were designated to be observing the Shevuot was not brought to the dining hall but instead taken to a staging area to arrange for the prayers and holiday dinner. Aff of Plf, Para. 11; Exhibit D.

**RESPONSE: The use of the undefined term "staging area" renders the statement too vague to allow for meaningful response. Undisputed that on Tuesday, June 3, 2014, at approximately 8 p.m., Plaintiff and other Jewish inmates left their housing block for a religious service. See June 3 and 4th Logbook attached to Yoon Decl. as Exhibit D, DEFENDANTS 0017, 0019-20.**

14. Defendants PURCELL, BAKER, ANDREU, MCCRAY and ST. VICTOR were assigned to the staging area and then present. Aff of Plf, Para. 10.

**RESPONSE: The use of the undefined term "staging area" renders the statement too vague to allow for meaningful response. Disputed that any of these Defendants were assigned to or present in such an area, or assigned to or present at the June 3, 2014 Jewish religious service at issue. See Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.**

15. At approximately 8:00 p.m. immediately before sundown and the commencement of the Holiday, the Plaintiff along with the other Jewish inmates at the check-in point were literally tossed by the aforementioned Defendants peanut butter sandwiches in brown bags and the Defendants informed the Plaintiff and the other Jewish inmates that this would by their kosher meals for the Holiday. The Plaintiff and the inmates pled with the Defendants

4

**SA22**

to be able to observe the holiday, which was to no avail. The inmates were returned to their cells at approximately 8:20. Practically all of the time between 8-8:20 p.m. was inclusive of walking to the staging area and back. Aff of Plf, Para.11. Exhibit D.

**RESPONSE: This paragraph includes multiple statements of fact in violation of Local Rule 56.1(c). The statements are disputed. See Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl; Yoon Decl.; Exhibit D June 3rd Logbook, DEFENDANTS 0017.**

16. The Plaintiff and the other Jewish inmates were also told by the Defendants that they would not be able to congregate as a group for prayers, that they would not be taken to observe the Holiday that night. Aff of Plf, Para.11.

**RESPONSE: Disputed. See Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.; Zupan Decl; McMahon Decl; Wassweiler Decl.**

17. At no time did the Defendants provide any explanation to the Plaintiff as to why he was denied his right to worship and observe the Shavuot Holiday. Aff of Plf, Para. 12.

**RESPONSE: Disputed that Plaintiff was denied his right to worship and observe the Shavuot Holiday. See Plaintiff's Deposition Transcript attached to Yoon Decl. as Exhibit E, pp. 65-68, 93-97, 99-100; Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.; Zupan Decl; McMahon Decl; Wassweiler Decl.**

18. The Plaintiff was very and deeply disappointed by being cruelly denied his right to worship and observe the Shavuout Holiday by the Defendants. Aff of Plf, Para. 12.

**RESPONSE: Disputed that Plaintiff was denied his right to worship and observe the Shavuot Holiday. See Yoon Decl, Exhibit E, pp. 65-68, 93-97, 99-100; Purcell Decl.;**

**Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.; Zupan Decl.; McMahon Decl; Wassweiler Decl.**

19. After the Plaintiff was deprived of his right to worship and observe Shavuot, he immediately wrote a letter to the facility assistant superintendent, deputy of programs and the chaplain of the religious program. Aff of Plf, Para. 13.

**RESPONSE: Disputed that Plaintiff was denied his right to worship and observe the Shavuot Holiday. See Yoon Decl., Exhibit D, DEFENDANTS 0017,0019,0020 & Exhibit E, pp. 65-70, 93-97, 99-100; Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.; McMahon Decl.; Wassweiler Decl. The statements concerning the writing of letters to non-parties are not material to Plaintiff's motion.**

20. The chaplain came to the Plaintiff's bloc(sic) and assured him that on the second night of the holiday that he would be permitted his religious observance. Aff of Plf, Para. 13.

**RESPONSE: The cited evidence is inadmissible hearsay, which may not be considered on this motion. See Fed. R. Evid. 801(c), 803(4). This fact is not material to Plaintiff's motion.**

21. On Wednesday, June 4, 2014, the equally important second night of Shavuot, the Plaintiff along with the other Jewish inmates who were scheduled to observe the Holiday were on this night escorted by the Defendants MCMAHON, WASEILER, and ZUPAN(the area supervisor) who were assigned to the auxiliary dining hall and provided kosher meals. Aff of Plf, Para. 14.

**RESPONSE: The use of the undefined term "auxiliary dining hall" renders the statement too vague to allow for meaningful response. Disputed that Zupan escorted Plaintiff and the other Jewish inmates to Holiday observation and that McMahon,**

6

**SA24**

**Wassweiler, and Zupan were assigned to the auxiliary dining hall. See Zupan Decl.; McMahon Decl.; Wassweiler Decl.**

22. The Plaintiff had been asked by the cadre for the Rabbi and liaison to the Jewish inmates at the facility to lead the prayers that night. Aff of Plf, Para. 14.

   **RESPONSE: Undisputed**

23. The Plaintiff began to lead the group in Jewish prayers. Aff of Plf, Para. 14.

   **RESPONSE: Undisputed**

24. At the inception of the prayers, the Defendants abruptly interrupted our prayers and commanded the Plaintiff and the Jewish inmates to stop. The Defendants then told the Plaintiff that they "didn't have time for our prayers" because they had "things to do" "just hurry up, eat and let's go!", and thus forbad the Plaintiff from any further religious observance. Again the Plaintiff and the Jewish inmates pled to be able to observe the holiday but that was for naught. They were returned to their cells at approximately 8:45 p.m., approximately half of the time was travelling from and to their cells. Aff of Plf, Para. 14; Exhibit E.

   **RESPONSE: This paragraph includes multiple statements of fact in violation of Local Rule 56.1(c). The statements are disputed. See Zupan Decl.; McMahon Decl.; Wassweiler Decl.; Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.**

25. Again, no reason whatsoever was provided to the Plaintiff as to why he was not permitted to worship and observe the second day of this major Jewish Holiday. Aff of Plf, Para. 15.

   **RESPONSE: Disputed that Plaintiff was denied his right to worship and observe the Shavuot Holiday. See Yoon Decl., Exhibit D & Exhibit E, pp. 65-68, 93-97, 99-100;**

**SA25**

**Zupan Decl.; McMahon Decl.; Wassweiler Decl.; Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.**

26. After the second night where the Plaintiff was inexplicably and cruelly denied his right tow worship and observe the Shevuot holid was then even more profoundly upset and deeply disappointed. Aff of Plf, Para. 15.

    **RESPONSE: Disputed that Plaintiff was denied his right to worship and observe the Shavuot Holiday. See Yoon Decl., Exhibit D, DEFENDANTS 0017,0019-0020 & Exhibit E, pp. 88-97, 99-100; Zupan Decl.; McMahon Decl.; Wassweiler Decl.; Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl.**

27. Upon the denial of the Plaintiff's right to practice his faith while in the custody of the New York State Department of Corrections' Downstate facility, he promptly submitted a grievance to the Grievance Supervisor at the facility. Aff of Plf, Para. 16; Exhibit F.

    **RESPONSE: Disputed that Plaintiff was denied his right to worship and observe the Shavuot Holiday. See Yoon Decl., Exhibit D & Exhibit E, pp. 65-70, 88-97, 99-100; Zupan Decl.; McMahon Decl.; Wassweiler Decl.; Purcell Decl.; Baker Decl.; Andreu Decl.; McCray Decl.;St. Victor Decl. The fact that Plaintiff submitted an inmate grievance is not material to Plaintiff's motion.**

**DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS
PRECLUDING SUMMARY JUDGMENT FOR PLAINTIFF**

28. On June 3, 2014, the first day of Shavuot, Plaintiff was released from his cell at approximately 8:00 p.m. for a Jewish religious service and was returned back to his cell at approximately 8:25 p.m. See Yoon Decl., Exhibit D, DEFENDANTS 0017.

29. On June 3, 2014, Defendants Purcell, St. Victor, McCray, Baker, Andreu, and Zupan did not work in East Lobby, the location that is referenced by Plaintiff as "check-in point" and

"staging area," and did not toss peanut butter sandwiches at Plaintiff and other Jewish inmates and did not tell them they cannot congregate as a group for prayers.  <u>See</u> Purcell Decl.; St. Victor Decl.; McCray Decl.; Baker Decl.; Andreu Decl.; Zupan Decl.

30. On June 4, 2014, the second day of Shavuot. Plaintiff was released from his cell at approximately 7:50 p.m. for a Jewish religious service and was returned back to his cell at approximately 8:45 p.m. <u>See</u> Yoon Decl., Exhibit D, DEFENDANTS 0019-0020.

31. On June 4, 2014, Defendants Purcell, St. Victor, McCray, Baker, Andreu, and Zapan did not escort any inmates to a Jewish religious service and were not assigned to a Jewish religious service. <u>See</u> Purcell Decl.; St. Victor Decl.; McCray Decl.; Baker Decl.; Andreu Decl.; Zupan Decl.

32. One June 4, 2014, Defendants McMahon, Wassweiler, Purcell, St. Victor, McCray, Baker, Andreu, and Zupan did not interrupt prayers by Plaintiff and other Jewish inmates and did not prevent them from observing their holiday. <u>See</u> Purcell Decl.; St. Victor Decl.; McCray Decl.; Baker Decl.; Andreu Decl.; Zupan Decl.; McMahon Decl.; Wassweiler Decl.

Dated: New York, New York
       April 9, 2021

                                     _____/s/_____
                                       AMANDA YOON

## CERTIFICATE OF SERVICE

I hereby certify that, on December 7, 2022, I served or caused to be served two copies of the accompanying Brief and Supplemental Appendix for Appellees by United States Postal Service first class/priority mail upon the following named person(s):

Jay S. Kravitz
P.O. Box 106
Earlton, NY 12058


_/s/ Mark S. Grube_